**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **PITTSBURGH LOGISTICS SYSTEMS, INC.** | § § § | |
| **Plaintiff,** | § § | |
| **v.** | § § | Civil Action No. _____ |
| **ANDREW BARRICKS,** as an adult individual, | § § § | |
| **Defendant.** | § § § | |

**PLAINTIFF, PITTSBURGH LOGISTICS SYSTEMS, INC.'S**
**ORIGINAL COMPLAINT**

**COMPLAINT IN CIVIL ACTION**

Plaintiff, Pittsburgh Logistics Systems, Inc., by and through its undersigned counsel, files the following Complaint in Civil Action, averring as follows:

**PARTIES**

1.      Plaintiff Pittsburgh Logistics Systems, Inc. (hereinafter referred to as "Plaintiff" or "PLS") is a corporation organized under the laws of the Commonwealth of Pennsylvania, with a principal place of business located at 3120 Unionville Road, Building 110, Suite 100, Cranberry Township, Pennsylvania 16066.

2.      Defendant, Andrew Barricks (hereinafter referred to as "Defendant" or "Mr. Barricks"), is an adult individual with an address of 370 N State Hwy 360, Apt. 3310, Mansfield, Texas 76063.

## JURISDICTION AND VENUE

3.      This Court has personal jurisdiction over the Defendant because Defendant worked

for PLS, which is organized and exists under the laws of the Commonwealth of Pennsylvania, and

maintains its principal place of business in Pennsylvania.  Defendant is a resident of Texas.

Therefore, there is complete diversity between the parties and the amount in controversy is in

excess of $75,000.00.  *Accord* 28 U.S.C. § 1332(a).

4.      Moreover, this Court possesses original jurisdiction as it rests in part upon a Federal

Question arising under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, and the Defend

Trade Secrets Act, 18 U.S.C. § 1836.  *Accord* 28 U.S.C. § 1331.

5.      This action also arises under the laws of the State of Texas as Defendant was

employed in Texas and there is an agreement between the parties making Texas law applicable.

6.      Venue is proper in this Court because a substantial part of the events or omissions

giving rise to PLS's claims occurred throughout Texas, including Harris County, and there is an

agreement between the parties making venue proper in Harris County, Texas.   28 U.S.C. §

1391(b)(2).

## FACTUAL BACKGROUND

7.      PLS is a provider of third-party logistics services to a wide array of industries,

including companies in metals, lumber, building products, automotive, nuclear, oil and gas, and

industrial equipment.  In other words, PLS coordinates the transportation of freight between its

customers and carriers to obtain efficiencies and cost-savings for its customers.

8.      PLS's operations are based on a system of proprietary client databases and logistics

management systems that are designed to maximize efficiencies to better serve its customers.

9.      PLS is what is known as a non-asset-based logistics company.  In other words, it

does not actually own the means of transportation, such as trucks, rail cars, barges, etc.  It serves

as a middleman—or broker—between customers who need transportation of their materials and trucking companies willing and able to move the freight according to the unique needs of each customer.

10.     PLS's relationships with its customers and understanding of their unique shipping needs, its network of effective and reliable carriers, along with the know-how of its highly trained employees, are the critical components of its operations.

11.     As a broker, PLS has compiled proprietary Customer Information which includes: the identity of customers; the customer contacts responsible for the shipment of certain freight; the industry segments in which they operate; the particular shipping lanes where the customer requires freight transportation; the required equipment to move the freight; contract terms; pricing, and other financial parameters and time constraints for a customer's freight.

12.     Through its employees, PLS develops and maintains its relationships with its customer base to build a successful operation.  To do so, PLS continuously works to build and maintain the relationships with its customer base.

13.     Logistics is a complex and competitive field, and for PLS, and companies like it, its primary assets include its confidential Customer Information, and its industry-specific know-how and expertise.

14.     PLS's customer information, including:  the identity of customers; the customer contacts responsible for the shipment of certain freight; the industry segments in which they operate; the particular shipping lanes where the customer requires freight transportation; the required equipment to move the freight; contract terms; rates and financial parameters; and time constraints, all represent a material investment of time and money.  This information is highly confidential to PLS and constitutes a valuable, proprietary asset.

3

15.     The customer information is a closely guarded trade secret to PLS.  PLS maintains its customer information in strict confidentiality internally and externally to prevent disclosure and misuse.

16.     In 2012, Mr. Barricks began working for PLS as an Account Executive Trainee.

17.     Mr. Barricks acquired specialized training in this complex and competitive field from PLS, and developed considerable customer relationships through PLS.

18.     Mr. Barricks was successful at PLS and worked his way up through a variety of management and leadership positions, including Group Sales Manager.

19.     In his various roles at PLS, Mr. Barricks was responsible for training, and sales and customer development, which involved daily interaction with PLS customers to provide strategic supply-chain solutions tailored to specific customer needs.

20.     Mr. Barrick's employment with PLS ended when he voluntarily resigned, effective April 14, 2020.

21.     On June 17, 2020, PLS's management received a call from one of its Dallas office employees.  This individual reported that one (1) of PLS's customers was solicited by Mr. Barricks after he voluntarily resigned his employment with PLS.  PLS immediately began an internal investigation.

22.     On April 9, 2020, Mr. Barricks sent an email from his PLS e-mail account to a personal Gmail account which contained, among other things, an attached Excel spreadsheet with a comprehensive list of PLS's confidential and proprietary information.  A copy of the e-mail that Mr. Barricks sent to himself is attached hereto as **Exhibit A** and referred to generally as "the April 9 e-mail."

23.     The Excel spreadsheet that Mr. Barricks sent to his personal e-mail account contained two hundred and fifty-nine (259) line items of PLS's confidential information for its entire Dallas, Texas office including:  customer names, the number of loads that were moved for a particular customer, the revenue for each customer, PLS's cost for moving the customer's freight charges, the margin that PLS earned, and the margin percentage by customer.

24.     PLS has learned that Mr. Barricks has been working for Glen Rose Transportation Management, Inc. ("GRTM"), a competitor of PLS in freight brokerage.

25.     GRTM is a company that, like PLS, represents itself as a leading provider of truckload flatbed freight brokerage services.

26.     Upon investigating Mr. Barricks' dereliction of his obligations to PLS, PLS discovered an e-mail that Mr. Barricks sent on April 10, 2020 from his PLS e-mail account to his new e-mail account with PLS's competitor GRTM.  A true and correct copy of the April 10 e-mail is attached hereto as **Exhibit B**.

27.     Mr. Barricks was apparently engaged by, and working for, PLS's competitor GRTM while he was still employed by PLS and had access to PLS's confidential information by virtue of his leadership position with PLS.

28.     As a condition of employment, PLS and Defendant entered into an Employment Agreement—labeled "Employment Terms and Conditions" ("the Agreement") which contained confidentiality, non-competition, and non-solicitation clauses.  The Agreement is attached hereto as **Exhibit C**.

29.     Section 4 of the Agreement specifies that Defendant is forbidden from using or disclosing confidential information of PLS, including, but not limited to:  information and knowledge pertaining to products, ideas, trade secrets, proprietary information, advertising,

distribution and sales methods, sales and profit figures, customers and client lists, and relationships between PLS and sales representatives, customers, clients, suppliers, and others who have business dealings with them.  Section 4 also provides that misappropriation or disclosure of the Confidential Information would constitute a breach of trust, fiduciary duty, and could cause irreparable injury to PLS.

30.    Section 7 of the Terms and Conditions prohibits Defendant from directly or indirectly soliciting or attempting to solicit any PLS customer to offer any service which is the same or similar to services offered by PLS for a period of two (2) years after the conclusion of his employment with PLS.

31.    Similarly, Section 8 of the Agreement prohibits Defendant from competing against PLS for a period of one (1) year in the geographic territory of PLS' operations.  The Agreement provides, in relevant part, that:  "For a period of 1 year after the termination of my employment, for any reason, I agree not to directly or indirectly … be employed by or otherwise render services to, or on behalf of, a Competing Business…."   A Competing Business includes any business engaged in providing transportation management, including outsourced transportation, freight brokerage or logistics services.

32.    Defendant knowingly executed the Agreement as a condition of his employment on December 12, 2016.

33.    PLS initially sought relief against Mr. Barricks in an action filed in Butler County, Pennsylvania State Court on June 23, 2020.  The Pennsylvania Court entered a preliminary injunction on July 20, 2020, and Defendant was provided notice the same day via facsimile.  The facsimile notice and order are attached here to as **Exhibit D**.

34.     Mr. Barricks thereafter objected to venue in Pennsylvania. Consequently, on September 29, 2020, the Pennsylvania Court agreed to vacate its Preliminary Injunction on the grounds that a lawsuit would be brought in Harris County, Texas.  An action arising from these facts against GRTM continues in Pennsylvania.  This action follows.

### COUNT I – VIOLATION OF THE COMPUTER FRAUD & ABUSE ACT

35.     PLS realleges and incorporates by reference the allegations of Paragraphs 1 through 34 above as if fully set forth herein.

36.     PLS brings this claim for relief for a violation of the Computer Fraud & Abuse Act pursuant to 18 U.S.C. § 1030.

37.     Defendant knowingly and/or with intent to defraud PLS, accessed or used PLS's computer systems without authorization and/or in excess of their authorization to obtain information from a protected computer used in interstate commerce.

38.     Defendant's knowing and willful use of PLS's computer systems for non-business purposes constituted unauthorized access of PLS's computer systems and computing resources in violation of the Agreement and other PLS policies governing the use of such resources.

39.     GRTM directly, or indirectly, induced and/or directed Defendant to access PLS's protected computer systems without authorization and/or in excess of his authorization to obtain PLS's trade secret, proprietary, and confidential information in violation of the Agreement, and the fiduciary duties that Defendant owed to PLS.

40.     GRTM, through Mr. Barricks, furthered the intended wrongdoing by improperly accessing, obtaining, and utilizing valuable information from PLS's protected computers for unauthorized purposes in violation of PLS's policies described in this Complaint.

7

41.     The information Defendants obtained from the above-alleged acts and conduct include valuable information relating to PLS's business operations, including, but not limited to, its recent customer list and contact information, load counts, revenue information, and pricing and profit numbers.  This critical information is extremely valuable to PLS and now allows Mr. Barricks and GRTM to unlawfully compete against PLS.  PLS considers the information misappropriated by Defendant to be trade secrets.

42.     On information and belief, Defendant and GRTM have benefitted from Defendant's unauthorized access and use of PLS's protected computer systems.

43.     As a direct and proximate result of the above-alleged wrongful conduct, PLS has expended time, money and resources, and computer analysis and analytics and will suffer great and irreparable harm.

44.     PLS has or will suffer further damages including the expenses associated with forensic examination of the electronic devices to be provided by Defendant, losses from assessing violations of its computer systems by Defendant, expenses associated with conducting a damage assessment, and other consequential damages.

45.     As a result, PLS is suffering and will continue to suffer immediate and irreparable harm.  PLS lacks an adequate remedy at law and, unless enjoined by this Court, Defendant will continue to cause irreparable injury and damage to PLS as a result of his illegal acts.

46.     PLS is likely to succeed on the merits of its claims against Defendant.  PLS is without adequate remedy at law for the injuries it continues to sustain resulting from Defendant's acts and conduct.

47.     WHEREFORE, PLS respectfully requests that this Court grant injunctive relief, and enter judgment in its favor and against Defendant in an amount exceeding $75,000.00, plus exemplary damages, costs, interest allowed by law, and reasonable attorneys' fees.

## COUNT II - VIOLATION OF DEFEND TRADE SECRETS ACT

48.     PLS realleges and incorporates by reference the allegations of Paragraphs 1 through 47 above as if fully set forth herein.

49.     PLS brings this claim for relief for a violation of the Defend Trade Secrets Act pursuant to 18 U.S.C. § 1836 *et seq*.

50.     As a result of his employment and position of trust with PLS, Mr. Barricks was given access to PLS's valuable trade secrets, including, but not limited to, its recent customer list and contact information, load counts, revenue information, and pricing and profit numbers.  These documents and information are unique to PLS and are not commonly known or available to the public.

51.     PLS takes reasonable steps to protect the secrecy of its confidential, proprietary, and trade secret information.  PLS's reasonable steps include, but are not limited to, the Agreement with Mr. Barricks, common to all employees in a position of trust, which requires all employees to maintain the confidentiality of proprietary and trade secret business information; restrict employee access to proprietary and trade secret information to employees with a legitimate business need to know such information; enforce disciplinary action against employees for improper use or disclosure of proprietary and trade secret information.

52.     PLS's trade secrets relate to products and/or services used in, or intended for use in, interstate commerce.

53.     Notwithstanding PLS's efforts to maintain the confidentiality of its trade secrets,

Mr. Barricks, on his own behalf and as an agent for GRTM, misappropriated PLS's valuable trade secrets used in, or intended for use in, interstate commerce for the benefit of Defendant and GRTM.

54.     Defendant disclosed and used PLS's recent customer list and contact information, load counts, revenue information, and pricing and profit numbers and other trade secret and proprietary information for the unlawful economic benefit of GRTM and to the detriment of PLS.

55.     Defendant knew and/or had reason to know that the disclosures and utilization were illegal and violated the Agreement and business policies identified in this Complaint.

56.     The information misappropriated by Defendant and GRTM derives independent economic value from not being generally known within the industry to PLS's competitors, who could obtain economic benefit from disclosure, use and replication of key information that contributes to and secures PLS's competitive edge in the marketplace.

57.     The information misappropriated by Defendant constitutes trade secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq*.  The misappropriation of PLS's trade secrets by Defendant gave and continues to give him and GRTM an unfair and unjust advantage in the operation of a competing business.

58.     The use and disclosure, and even threatened use and disclosure of PLS's trade secrets by Defendant entitles PLS to immediate injunctive relief and damages pursuant to 18 U.S.C. § 1836(b)(3).

59.     At all material times, Mr. Barricks has acted willfully, maliciously, and in bad faith.

60.     PLS has suffered and will continue to suffer irreparable harm as a result of the misappropriation by Defendant.

61.     WHEREFORE, PLS respectfully requests that this Court grant injunctive relief and enter an injunction judgment in its favor and against Defendant in an amount exceeding $75,000.00, plus exemplary damages, costs, interest allowed by law, and reasonable attorneys' fees.

## COUNT III – BREACH OF CONTRACT

62.     Plaintiff incorporates and realleges paragraphs 1 through 61 as if the same were set forth at length herein.

63.     Defendant executed his Employment Agreement with PLS whereby he agreed not to use any trade secret or confidential information of PLS.  *See* **Exhibit C**.  PLS's customer list is a trade secret.

64.     The terms of that Agreement are reasonable and enforceable.

65.     The Agreement was supported by valuable consideration.  Indeed, execution of the Agreement was a condition of employment.

66.     Defendant also agreed not to compete against PLS for a period of one (1) year within PLS's geographical territories.

67.     Contrary to the terms of the Agreement, Defendant has illegally taken PLS's trade secrets and, upon information and belief, intends to use PLS's trade secrets for competitive purposes.

68.     Defendant's aforementioned actions constitute a breach of his Employment Agreement.

69.    WHEREFORE, PLS respectfully requests that this Court grant injunctive relief and enter judgment in its favor and against Defendant in an amount exceeding $75,000.00, plus exemplary damages, costs, interest allowed by law, and reasonable attorneys' fees.

## COUNT IV – MISAPPROPRIATION OF TRADE SECRETS UNDER THE TEXAS UNIFORM TRADE SECRETS ACT

70.    Plaintiff incorporates and realleges paragraphs 1 through 69 as if the same were set forth at length herein.

71.    The Texas Uniform Trade Secrets Act, Tex. Civ. Prac. & Rem. Code § 134.001 *et seq.*, ("the Act") prohibits misappropriation of proprietary and/or confidential trade secrets.

72.    By virtue of PLS's employment relationship with Defendant, and because of his sensitive sales leadership position with PLS, Defendant had access to PLS's proprietary and confidential information.

73.    The confidential information misappropriated by Defendant included the identity of PLS's customers, the revenue of PLS's customers, the number of loads moved for particular PLS customers, the margins that PLS received on loads, and the margin percentage.

74.    Under the Act, customer lists, financial data, including the cost, revenue, and the profitability of PLS's shipments are trade secrets, for which PLS is entitled to protection and the preservation of secrecy.  Tex. Civ. Prac. & Rem. Code §§ 134.002(6), 134A.006.

75.    PLS's customer information is a trade secret that was developed over the course of years and at great expense.  PLS zealously guards its customer information from disclosure.

76.    The price that PLS charges for moving a particular load of freight, and the amount that PLS pays the motor carrier, is information that Defendant had access to and misappropriated by sending it to his personal e-mail account.

77.     Each trade secret is confidential to PLS, and PLS derives significant economic value from each trade secret.  Upon information and belief, PLS alleges that Defendant is sharing, has shared, or is offering to share PLS's confidential information with GRTM.

78.     The Act prohibits both the disclosure and the receipt of protected information.

79.     Upon information and belief, Defendant violated the Act by taking and using or disclosing proprietary, confidential information, and trade secrets of PLS in his current capacity working for GRTM.

80.     It is believed that Defendant is using PLS customer information to solicit PLS's customers.

81.     Mr. Barricks' misappropriation of PLS's trade secrets has caused harm to PLS's customer relationships, prospective customer relationships, loss of competitive advantage, loss of reputation, loss of economic advantage, and loss of business in an amount more than $75,000.00, if additional harm can be prevented through a preliminary and then permanent injunction against Defendant.

82.     The actions of Mr. Barricks were willful, wanton, and/or malicious such that the imposition of exemplary damages under Tex. Civ. Prac. & Rem. Code § 134.004(b) is warranted.

83.     WHEREFORE, Plaintiff requests that this Court grant injunctive relief award judgment in favor of Plaintiff and against Defendant in an amount more than $75,000.00, plus exemplary damages, and Plaintiff's reasonable attorney fees, court costs, interest allowed by law, and any other and further relief as this Court deems just and proper.

## COUNT V – UNFAIR COMPETITION

84.     Plaintiff incorporates and realleges all the paragraphs 1 through 83 as if the same were set forth at length herein.

13

85.     Plaintiff brings this claim for relief for Defendant's unfair competition under Texas common law.

86.     Defendant acted with the intent to advance a rival business interest and used improper means to harm Plaintiff and procure business from Plaintiff's customers.

87.     Defendant acted intentionally to harm Plaintiffs, or at least with reckless disregard to the harm that his action would cause Plaintiff.

88.     As a direct and proximate consequence of Defendant's conduct, Plaintiff has suffered financial and competitive damages to its customer relationships, prospective customer relationships, and valuable business interests in an amount more than $75,000.00, provided that the harm to Plaintiff's business can be limited through a preliminary injunction.

89.     The actions of Defendant were willful, wanton, and/or malicious such that the imposition of exemplary damages is warranted.

90.     WHEREFORE, Plaintiff requests that this Court grant injunctive relief, and award judgment in favor of Plaintiff and against Defendant in an amount more than $75,000.00, plus punitive damages, and Plaintiff's reasonable attorney fees, court costs, interest allowed by law, and any other and further relief as this Court deems just and proper.

## COUNT VI – TORTIOUS INTERFERENCE WITH CONTRACT

91.     Plaintiff incorporates and realleges paragraphs 1 through 90 as if the same were set forth at length herein.

92.     Plaintiff brings this claim for relief for Defendant's tortious interference with contract under Texas common law.

93.     PLS had and/or has current and prospective business relations with various customers for the provision of transportation logistics services.

14

94.     Defendant was aware of and had actual and constructive knowledge of PLS's current and prospective business relationships with these customers.

95.     Notwithstanding, Defendant knowingly, intentionally, willfully, maliciously, and with the intent to harm PLS, interfered with PLS's current and prospective business relations with its customers and deliberately usurped them from doing business with PLS.

96.     Defendant lacked privilege or justification to interfere with PLS's actual and prospective business relations with its customers.

97.     Defendant's interference caused harm to PLS's customer relationships, prospective customer relationships, contractual relationships, and valuable business interests in an amount in excess of $35,000.00, provided that the harm to PLS's business can be limited with a preliminary injunction.

98.     Defendant's actions were willful, wanton, and/or malicious such that the imposition of punitive damages is warranted.

99.     WHEREFORE, Plaintiff requests that this Court grant injunctive relief, and award judgment in favor of Plaintiff and against Defendant in an amount more than $75,000.00, plus exemplary damages, and Plaintiff's reasonable attorney fees, court costs, interest allowed by law, and any other and further relief as this Court deems just and proper.

## COUNT VII – TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS

100.     PLS realleges and incorporates by reference the allegations of Paragraphs 1 through 99 above as if fully set forth herein.

101.     Plaintiff brings this claim for relief for Defendant's tortious interference with prospective business under Texas common law.

102.     PLS had valid, existing contractual relationships with one or more clients listed in **Exhibit A**.  The Defendant was fully aware of these existing relationships.

15

103.    PLS had a legitimate and reasonable expectation that these business relationships would continue absent improper, unjustified, and unprivileged interference.

104.    GRTM, through information provided by Defendant, knew of these existing business relationships and that there was a reasonable probability that PLS would have been awarded more work.

105.    Defendant has willfully and intentionally interfered with PLS's prospective business relationships and continues to do so through the tortious conduct described herein.  This tortious activity has impeded PLS's prospective business relations with its existing customers.

106.    Defendant's actions, as alleged, were performed with malice and with wanton and willful disregard of the rights of PLS.

107.    As a result of the interference by Defendant, PLS has suffered substantial damages.

108.    Defendant was not justified or privileged to interfere with PLS's relationships with these clients.

109.    WHEREFORE, Plaintiff requests that this Court grant injunctive relief, and award it compensatory damages caused by the loss of the benefit of the business relationships it had with its clients, in an amount more than $75,000.00, plus exemplary damages, and Plaintiff's reasonable attorney fees, court costs, interest allowed by law, and any other and further relief as this Court deems just and proper.

## COUNT VIII – BREACH OF FIDUCIARY DUTY OF LOYALTY

110.    PLS realleges and incorporates by reference the allegations of Paragraphs 1 through 109 above as if fully set forth herein.

111.    Plaintiff brings this claim for relief for Defendant's breach of fiduciary duty of loyalty under Texas common law.

16

112.    Defendant was a Group Sales Manager for PLS and possessed control over, and knowledge of, key aspects of PLS's business.  As an employee of PLS, Defendant was in a position which gave rise to a fiduciary duty of trust and loyalty to PLS.

113.    Defendant was not honest in his dealings with PLS and engaged in activities including, but not limited to, the following—all while he was still employed with PLS: (i) began competing with PLS; (ii) solicited PLS's clients for his new employer, GRTM; (iii) misappropriated PLS's Confidential Information and trade secrets; and (iv) interfered with PLS's relationships with its clients.  Defendant breached his fiduciary duty to PLS.

114.    While Mr. Barricks was employed with PLS, he usurped corporate opportunities belonging to PLS and, now working for a direct competitor—GRTM—and diverting business to it, Mr. Barricks derived, and continues to derive, personal profit through his breach of this fiduciary duty.

115.    PLS has suffered damages as a result of Defendant's breach of his fiduciary duty in an amount to be determined at trial.  In addition, PLS is entitled to recover punitive damages due to Defendant's malicious actions and intentional disregard for the rights of PLS.

116.    WHEREFORE, Plaintiff requests that this Court grant injunctive relief, and award it compensatory damages caused by the loss of the benefit of the business relationships it had with its clients, in an amount more than $75,000.00, plus exemplary damages, and Plaintiff's reasonable attorney fees, court costs, interest allowed by law, and any other and further relief as this Court deems just and proper.

## COUNT IX – REQUEST FOR INJUNCTION

117.    Plaintiff incorporates and realleges all the preceding paragraphs as if the same were set forth at length herein.

118.     PLS requests that the Court issue a preliminary injunction against Defendant to prevent immediate, imminent, and irreparable harm to PLS.  PLS further requests that upon final hearing, the Court award a permanent injunction against Mr. Barricks, as a result of his actual and/or threatened misappropriation of PLS's trade secrets, as detailed in all the foregoing causes of action.

119.     PLS has spent years developing its customer relationships and goodwill.

120.     As described herein, Defendant has wrongfully obtained, used, and/or disclosed PLS's confidential information, solicited PLS's customers, and tortiously interfered with PLS's existing contracts and prospective business relations.

121.     Non-compete covenants are generally enforceable under Texas law pursuant to Tex. Bus. & Comm. Code § 15.50(a) where, as here, they are reasonable and ancillary to or part of an otherwise enforceable agreement.  *Alex Sheshunoff Mgmt. Services, L.P. v. Johnson*, 209 S.W.3d 644, 657 (Tex. 2006).

122.     Courts routinely recognize injunctive relief as an appropriate vehicle for enforcement of non-compete covenants and confidentiality agreements.  *See, e.g.*, *McKissock, LLC v. Martin*, No. EP-16-CV-400-PRM, 2016 WL 8138815, at *9 (W.D. Tex. Nov. 10, 2016); *Sirius Computer Solutions, Inc. v. Sparks*, 138 F. Supp. 3d 821, 843–44 (W.D. Tex. 2015); *Inter/Natl. Rental Ins. Servs., Inc. v. Albrecht*, No. 4:11-CV-00853, 2012 WL 642809 (E.D. Tex. Feb. 28, 2012).  Considerable authority under Texas law indicates that injuries to "business goodwill, confidential or proprietary information, trade secrets, customer information, and specialized training are examples of interests that can be, in appropriate circumstances, worthy of protection by a covenant not to compete." *McKissock*, 2016 WL 8138815, at *9; *Heil Trailer Int'l Co. v. Kula*, 542 F. App'x 329, 335 (5th Cir. 2013).

123.    PLS believes that Defendant has contacted its customers, and believes and therefore avers, that Defendant will continue to contact PLS's customers.

124.    Injunctive relief is an appropriate mechanism to protect confidential information and trade secrets necessary to prohibit an employee from using confidential information to solicit a former employer's clients.  *Rugen v. Interactive Business Systems*, 864 S.W.2d 548, 551–52 (Tex. App.—Dallas 1993, no writ).  A party may obtain injunctive relief if the defendant has appropriated the plaintiff's confidential information or trade secrets and may obtain an "unfair market advantage."  *T-N-T Motorsports v. Henessy Motorsports*, 965 S.W.2d 18, 23-24 (Tex. App.—Houston [1st Dist.] 1998, pet. dism'd); *Garth v. Staktedk Corp.*, 876 S.W.2d 545, 549 (Tex. App.—Austin 1994, writ dism'd w.o.j.).  Finally, injunctive relief is appropriate where a former employee has breached his fiduciary duty of loyalty to his former employer.  *Goodman v. Crevoisier*, No. A-12-CV-1169-JRN, 2013 WL 12116541, at *2 (W.D. Tex. May 22, 2013).

125.    As Defendant has already demonstrated that he has misappropriated PLS's trade secrets, if left unchecked, his unlawful conduct will continue to the detriment of PLS.  PLS will suffer imminent and irreparable harm in the form of loss of goodwill, business relationships, and customers.

126.    As a result of Defendant's wrongful conduct, he has gained and will continue to gain an unfair advantage by putting himself in a position to divert significant business away from PLS.

127.    Under applicable law, a petitioner for preliminary injunction must establish:  (1) the movant has shown a reasonable probability of success on the merits; (2) the movant will be irreparably injured by denial of relief; (3) granting preliminary relief will not result in even greater harm to the other party; and (4) granting preliminary relief will be in the public interest.  *Janvey v.*

*Alguire*, 647 F.3d 585, 595 (5th Cir. 2011); *Hoover v. Morales*, 164 F. 3d 221, 224 (5th Cir. 1998);

*Bates Energy Oil & Gas, LLC v. Complete Oil Field Servs., LLC*, No. SA-17-CA-808-XR, 2017

WL 4051569, at *3 (W.D. Tex. Sept. 13, 2017).  The preliminary injunction standard only requires

a *prima facie* case, not entitlement to summary judgment.  *Janvey*, 647 F.3d at 595–96.  As such,

a preliminary injunction is clearly appropriate in this case.

128.    PLS has a reasonable probability of success on the merits of its case, as is evident

through the evidence of record and attached as Exhibits to this verified complaint.

129.    There is no question that PLS has been and will continue to be irreparably injured

by Defendant's unlawful conduct and there is no adequate remedy at law for the damage to PLS's

goodwill and industry reputation.  If Mr. Barricks is not enjoined from contacting PLS's customers,

PLS's reputation and business interests will be irreparably damaged.

130.    Accordingly, PLS has passed the threshold test of satisfying the first two (2)

elements of its request for a preliminary injunction.  *See, e.g.*, *Molex, Inc. v. Nolen*, 759 F.2d 474,

476–78 (5th Cir. 1985) (affirming permanent injunction against former employee where he

acquired trade secrets that led to poaching of former employer's customers); *Cambridge*

*Strategies, LLC v. Cook*, No. 3:10-CV-2167-L, 2010 WL 5139843, at *7 (N.D. Tex. Dec. 17, 2010)

(preliminarily enjoining defendant from using, disclosing, or misappropriating any trade secrets

from plaintiff, including customer lists and other proprietary information acquired in the course of

employment with the former employer); *Evans Consoles, Inc. v. Hoffman Video Sys., Inc.*, No.

3:01-CV-1333-P, 2001 WL 36238982, at *8–9 (N.D. Tex. Dec. 6, 2001) (granting preliminary

injunction against former employee arising out of breach of confidentiality agreement where "it

might be difficult to avoid the disclosure or use of [plaintiff's] confidential information"); *Merrill*

*Lynch, Pierce, Fenner & Smith v. Wright*, No. 3:93CV01101-D, 1993 WL 13036199, at *4–5

(N.D. Tex. July 2, 1993) (granting preliminary injunction and finding that former employer was likely to succeed on merits of trade secrets claim to prevent former employees from soliciting customers)  Granting PLS its requested preliminary relief will not result in even greater harm to Defendant.

131.    Granting PLS a preliminary injunction against Defendant is in the best interest of the public, and it is in the best interest of PLS's customers.  An injunction will protect PLS's legitimate, protectable, business interests, and protect PLS's trade secrets from misappropriation.

132.    If Mr. Barricks is not enjoined from continuing his unlawful conduct, PLS will suffer imminent and irreparable harm to its legitimate business interests, as Mr. Barricks will be able to gain an unfair advantage and PLS will lose valuable relationships with its customers.

133.    WHEREFORE PLS respectfully requests that this Court enter a preliminary and permanent ORDER enjoining Defendant from:  (a) enjoining Defendant from using or disclosing, or from threatening to use or disclosed, to any person or entity any trade secrets, confidential, or proprietary information obtained during the course of his employment with PLS, including but not limited to PLS's customer list; (b) enjoining Defendant from directly or indirectly competing against PLS pursuant to the terms of his Employment Agreement for a period of one (1) year; (c) such other remedies as this Court deems just and proper.

Respectfully,

Bryant S. Banes
Federal ID No. 31149
State Bar No. 24035950
Sarah P. Harris
Federal ID No. 3421904
State Bar No. 24113667
NEEL, HOOPER & BANES, P.C.
1800 West Loop South, Suite 1750
Houston, Texas 77027
(713) 629-1800
(713) 629-1812 (Fax)
E-mail:  bbanes@nhblaw.com
              sharris@nhblaw.com

**ATTORNEYS FOR PLAINTIFF,
PITTSBURGH LOGISTICS SYSTEMS,
INC.**

**VERIFICATION**

STATE OF TEXAS        §
                      §
COUNTY OF HARRIS      §

I, Joseph J. Bielawski, Jr., Chief Operations Officer of Pittsburgh Logistics Systems, Inc., have read the foregoing Complaint and verify that it is based upon information which I have furnished to outside counsel and information which has been gathered by outside counsel in preparation of the Complaint and that it is true and correct to the best of my knowledge, information, and belief.  The language of the Complaint is that of outside counsel and not of Plaintiff.  To the extent that the content of the foregoing Complaint is that of counsel, I have relied upon counsel in making this verification.  I understand that false statements herein are made subject to the penalties of perjury relating to unsworn falsification to authorities which provides that if a person knowingly makes false statements, he may be subject to criminal penalties.

_____
Joseph J. Bielawski, Jr.

**SUBSCRIBED AND SWORN TO BEFORE ME** on this 15 day of December, 2020, to which witness my hand and official seal.

_____
Notary Public in and for the State of PA

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
SANDRA DANIELLE MORSE
Notary Public
BUTLER TWP, BUTLER COUNTY
My Commission Expires Feb 12, 2021